# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| DAVID KNIGHTEN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>YUM BRANDS, INC., CHARTER CENTRAL, LLC AND CHARTER FOODS, INC,<br><br><div align="right">Defendants.</div> | **CASE NO.** ___ 3:23CV-274-BJB<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **NEGLIGENCE;**<br>2. **BREACH OF CONFIDENCE;**<br>3. **BREACH OF IMPLIED CONTRACT;**<br>4. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**<br><br>**[JURY TRIAL DEMANDED]** |

## INTRODUCTION

1.      Representative Plaintiff David Knighten ("Representative Plaintiff") brings this class action against Defendants Charter Central, LLC, Charter Foods, Inc. and Yum Brands, Inc. ("Defendants") for their failure to properly secure and safeguard Representative Plaintiff's and Class Members' personally identifiable information stored within Defendant's information network, including without limitation name, address, Social Security number and date of birth (these types of information, *inter alia*, being hereafter referred to, collectively, as "personally identifiable information" or "PII").[1] Defendants failed to properly secure and safeguard Representative Plaintiff's and Class Members' PII stored within Defendants' information network.

---

[1]   Personally identifiable information ("PII") generally incorporates information that can be used to   distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information

Case 2:23-cv-00168-TRM-CRW    Document 1    Filed 05/31/23    Page 1 of 36    PageID #: 1

2.    With this action, Representative Plaintiff seeks to hold Defendants responsible for the harms they caused and will continue to cause Representative Plaintiff and countless other similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendants on January 13, 2023, by which cybercriminals infiltrated Defendants' inadequately protected network servers and accessed highly sensitive PII belonging to both adults and children, which was being kept unprotected (the "Data Breach").

3.    While Defendants claims to have discovered the breach as early as January 13, 2023, Defendant failed to inform Representative Plaintiff until April 7, 2023, vis-à-vis a mailed letter.

4.    Defendants acquired, collected and stored Representative Plaintiff's and Class Members' PII in connection with their provision of food services. Therefore, at all relevant times, Defendants knew or should have known that Representative Plaintiff and Class Members would use Defendants' networks to store and/or share sensitive data, including highly confidential PII.

5.    By obtaining, collecting, using and deriving a benefit from Representative Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to those individuals. These duties arise from state and federal statutes and regulations as well as common law principles.

6.    Defendants disregarded the rights of Representative Plaintiff and Class Members by intentionally, willfully, recklessly or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data and failing

---

that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Representative Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Representative Plaintiff and Class Members in the future. Representative Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class and at least one other Class Member is a citizen of a state different from Defendants.

8.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

9.     Defendants Charter Foods, Inc. and Charter Central, LLC. are corporations headquartered and routinely conducting business in Tennessee. Defendant Yum Brands, Inc. is a corporation headquartered in Kentucky and routinely conducting business in Tennessee.  The companies have sufficient minimum contacts in Kentucky and have intentionally availed themselves of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and services within Kentucky.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiff's claims took place within the Western District of Kentucky, and Defendants do business in this Judicial District.

## PLAINTIFF

11.     Representative Plaintiff is an adult individual and, at all relevant times herein, a resident and citizen of the State of North Carolina. Representative Plaintiff is a victim of the Data Breach.

12.     Defendants received highly sensitive personal information from Representative Plaintiff in connection with services Defendants provided to Representative Plaintiff. As a result, Representative Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

13.     Representative Plaintiff received—and was a "consumer" for purposes of obtaining—services from Defendants within this state.

14.     At all times herein relevant, Representative Plaintiff is and was a member of each of the Classes.

15.     As required in order to obtain services from Defendants, Representative Plaintiff provided Defendants with highly sensitive personal information.

16.     Representative Plaintiff's PII was exposed in the Data Breach because Defendants stored and/or shared Representative Plaintiff's PII. His PII was within the possession and control of Defendants at the time of the Data Breach.

17.     Representative Plaintiff received a letter from Defendants, dated on or about April 7, 2023, informing him that his PII was involved in the Data Breach (the "Notice").

-4-

18.     As a result, Representative Plaintiff spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring his accounts and seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

19.     Representative Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendants, which was compromised in and as a result of the Data Breach.

20.     Representative Plaintiff suffered lost time, annoyance, interference and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling his PII.

21.     Representative Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from his PII being placed in the hands of unauthorized third parties/criminals.

22.     Representative Plaintiff has a continuing interest in ensuring that his PII, which upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

## **DEFENDANTS**

23.     Defendant Charter Central, LLC. is a corporation with a principal place of business located at 1111 Gateway Service Park Rd., Morristown, TN 37813.

-5-

24.     Defendant Charter Central, LLC. operates several YUM Brands franchises.[2]

25.     Defendant Charter Foods, Inc. is a corporation with a principal place of business located at 1111 Gateway Service Park Rd., Morristown, TN37813.

26.     Defendant Charter Foods, Inc. operates several YUM Brands franchises.

27.     Defendant Yum Brands is a corporation with a principal place of business located at 1441 Gardiner Lane, Louisville, KY 40213.

28.     Defendant operates as a franchisor of several fast-food brands including KFC, Taco Bell, Pizza Hut and The Habit Burger Grill.[3]

29.     The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such other responsible parties when its identities become known.

## CLASS ACTION ALLEGATIONS

30.     Representative Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following Class (collectively, the "Class"):

**Nationwide Class:**

---

[2] *Charter Foods,* https://www.linkedin.com/company/charter-foods-inc./ (last accessed April 17, 2023).
[3] *Yum Brands Company,* https://www.yum.com/wps/portal/yumbrands/Yumbrands/company/ (last accessed April 17, 2023).

"All individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendants on January 13, 2023."

31.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors and any entity in which Defendants have a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

32.     Representative Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

33.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed classes is easily ascertainable.

a.     **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiff is informed and believes and on that basis alleges that the total number of Class Members is in the hundreds of thousands of individuals. Membership in the Classes will be determined by analysis of Defendants' records.

b.  **Commonality**: Representative Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including but not necessarily limited to:

1)  Whether Defendants had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PII;

2)  Whether Defendants knew or should have known of the susceptibility of its data security systems to a data breach;

3)  Whether Defendants' security procedures and practices to protect their systems were reasonable in light of the measures recommended by data security experts;

4)  Whether Defendants' failure to implement adequate data security measures allowed the Data Breach to occur;

5)  Whether Defendants failed to comply with their own policies and applicable laws, regulations and industry standards relating to data security;

6)  Whether Defendants adequately, promptly and accurately informed Representative Plaintiff and Class Members that their PII had been compromised;

7)  How and when Defendants actually learned of the Data Breach;

-8-

8)      Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Representative Plaintiff and Class Members;

9)      Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10)     Whether Defendants engaged in unfair, unlawful or deceptive practices by failing to safeguard the PII of Representative Plaintiff and Class Members;

11)     Whether Representative Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendants' wrongful conduct;

12)     Whether Representative Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

c.      **Typicality**: Representative Plaintiff's claims are typical of the claims of the Plaintiff Classes. Representative Plaintiff and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

d.      **Adequacy of Representation**: Representative Plaintiff in this class action is adequate representative of each of the Plaintiff Classes in that the Representative Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of this case and

has retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in its entirety. Representative Plaintiff anticipates no management difficulties in this litigation.

e.  **Superiority of Class Action**: Since the damages suffered by individual Class Members while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Plaintiff classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

34.  This Class Action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety. Defendants' policies and practices challenged herein apply to and affect Class Members uniformly

and Representative Plaintiff's challenge of these policies and practices hinges on Defendants' conduct with respect to the Class in its entirety, not on facts or law applicable only to Representative Plaintiff.

35.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PII of Class Members, and Defendants may continue to act unlawfully as set forth in this Complaint.

36.     Further, Defendants have acted or refused to act on grounds generally applicable to the Class and accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

<p style="text-align:center"><strong><u>COMMON FACTUAL ALLEGATIONS</u></strong></p>

**<u>The Cyberattack</u>**

37.     In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' sensitive data including but not limited to name, date of birth, Social Security number and address. Representative Plaintiff was among the individuals whose data was accessed in the Data Breach.

38.     Representative Plaintiff was provided the information detailed above upon his receipt of a letter from Defendant, dated on or about April 7, 2023. He was not aware of the Data Breach until receiving that letter.

**<u>Defendants' Failed Response to the Breach</u>**

39.     Not until roughly nine months after they claimed to have discovered the Data Breach did Defendants begin sending the Notice to persons whose PII and/or financial information Defendants confirmed was potentially compromised as a result of the Data Breach. Importantly,

Defendants did not inform Representative Plaintiff and other the victims of the Data Breach until April 7, 2023, in a mailed Notice. The Notice provided basic details of the Data Breach and Defendants' recommended next steps.

40.     The Notice included, *inter alia*, that Defendants had learned of the Data Breach on January 13, 2023, had taken steps to respond and were continuing to investigate. Defendants claimed that they took measures to protect against future attacks.

41.     Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiff's and Class Members' PII with the intent of engaging in misuse of the PII, including marketing and selling Representative Plaintiff's and Class Members' PII.

42.     Defendants had and continue to have obligations created by reasonable industry standards, common law, state statutory law and their own assurances and representations to keep Representative Plaintiff's and Class Members' PII confidential and to protect such PII from unauthorized access.

43.     Representative Plaintiff and Class Members were required to provide their PII to Defendants in order to receive services. Defendants created, collected and stored Representative Plaintiff's and Class Members' PII with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

44.     Despite this, Representative Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used and what steps are being taken, if any, to secure their PII. Representative Plaintiff and Class Members are left to speculate as to whether their PII was stolen and to whom. They are left to further speculate as to

the full impact of the Data Breach and how exactly Defendants intend to enhance their information security systems and monitoring capabilities so as to prevent further breaches.

45.     Representative Plaintiff's and Class Members' PII may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Representative Plaintiff and/or Class Members. Either way, unauthorized individuals can now easily access the PII of Representative Plaintiff and Class Members.

**Defendants Collected/Stored Class Members' PII**

46.     Defendants acquired, collected and stored and assured reasonable security over Representative Plaintiff's and Class Members' PII.

47.     As a condition of their relationships with Representative Plaintiff and Class Members, Defendants required that Representative Plaintiff and Class Members entrust Defendants with highly sensitive and confidential PII.

48.     By obtaining, collecting and storing Representative Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Representative Plaintiff's and Class Members' PII from unauthorized disclosure.

49.     Representative Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Representative Plaintiff and Class Members relied on Defendants to keep their PII confidential and securely maintained, to use this information for business and healthcare purposes only and to make only authorized disclosures of this information.

50. Defendants could have prevented the Data Breach, which they discovered as early as January 13, 2023, by properly securing and encrypting and/or more securely encrypting their servers generally as well as Representative Plaintiff's and Class Members' PII.

51. Defendants' negligence in safeguarding Representative Plaintiff's and Class Members' PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

52. There have been a large number of high-profile cyberattacks even in just the short period preceding the filing of this Complaint and cyberattacks, generally, have become increasingly more common.

53. Due to the high-profile nature of data breaches, Defendants were and/or certainly should have been on notice and aware of such attacks occurring and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendants are large, sophisticated operations with the resources to put adequate data security protocols in place.

54. Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect Representative Plaintiff's and Class Members' PII and financial information from being compromised.

**Defendants Had an Obligation to Protect the Stolen Information**

55. Defendants' failure to adequately secure Representative Plaintiff's and Class Members' sensitive data breaches duties they owe Representative Plaintiff and Class Members under statutory and common law.

56.     Defendants were prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

57.     In addition to their obligations under federal and state laws, Defendants owed a duty to Representative Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in Defendants' possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. Defendants owed a duty to Representative Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements and to ensure that its computer systems, networks and protocols adequately protected the PII of Representative Plaintiff and Class Members.

58.     Defendants owed a duty to Representative Plaintiff and Class Members to design, maintain and test its computer systems, servers and networks to ensure that the PII in its possession was adequately secured and protected.

59.     Defendants owed a duty to Representative Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII in its possession including not sharing information with other entities who maintained sub-standard data security systems.

60.     Defendants owed a duty to Representative Plaintiff and Class Members to implement processes that would immediately detect a breach on their data security systems in a timely manner.

61.     Defendants owed a duty to Representative Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

62.     Defendants owed a duty to Representative Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to Defendants.

63.     Defendants owed a duty of care to Representative Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

64.     Defendants owed a duty to Representative Plaintiff and Class Members to encrypt and/or more reliably encrypt Representative Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identity possible threats.

**Value of the Relevant Sensitive Information**

65.     PII is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites. Unsurprisingly, PII is at high risk for theft and acutely affected by cyberattacks.

66.     The high value of PII to criminals is further evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details

have a price range of $50 to $200.[4] Experian reports that a stolen credit or debit card number can

sell for $5 to $110 on the dark web.[5] Criminals can also purchase access to entire company data

breaches from $999 to $4,995.[6]

67. These criminal activities have and will result in devastating financial and personal

losses to Representative Plaintiff and Class Members. For example, it is believed that certain PII

compromised in the 2017 Experian data breach was being used three years later by identity thieves

to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an

omnipresent threat for Representative Plaintiff and Class Members for the rest of their lives. They

will need to remain constantly vigilant.

68. The FTC defines identity theft as "a fraud committed or attempted using the

identifying information of another person without authority." The FTC describes "identifying

information" as "any name or number that may be used, alone or in conjunction with any other

information, to identify a specific person," including, among other things, "[n]ame, Social Security

number, date of birth, official State or government issued driver's license or identification number,

alien registration number, government passport number, employer or taxpayer identification

number."

69. Identity thieves can use PII, such as that of Representative Plaintiff and Class

Members which Defendants failed to keep secure, to perpetrate a variety of crimes that harm

victims. For instance, identity thieves may commit various types of government fraud such as

---

[4] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 28, 2021).
[5] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed November 5, 2021).
[6] *In the Dark*, VPN Overview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed January 21, 2022).

immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

70. The ramifications of Defendants' failure to keep secure Representative Plaintiff's and Class Members' PII are long lasting and severe. Once PII is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PII of Representative Plaintiff and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

71. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

72. When cybercriminals access personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendants may have exposed Representative Plaintiff and Class Members.

73. And data breaches are preventable.[8] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the Data Breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate

---

[7] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed January 21, 2022).
[8] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

security solutions."[9] She added that "[o]rganizations that collect, use, store and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[10]

74.     Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures … "Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[11]

75.     Here, Defendants knew of the importance of safeguarding PII and of the foreseeable consequences that would occur if Representative Plaintiff's and Class Members' PII was stolen, including the significant costs that would be placed on Representative Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendants are large, sophisticated organizations with the resources to deploy robust cybersecurity protocols. They knew or should have known that the development and use of such protocols were necessary to fulfill their statutory and common law duties to Representative Plaintiff and Class Members. Their failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

76.     Defendants disregarded the rights of Representative Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiff's and Class Members' PII, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv)

---

[9]    *Id.* at 17.
[10]   *Id.* at 28.
[11]   *Id.*

concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## FIRST CLAIM FOR RELIEF
### Negligence
### (On behalf of the Nationwide Class)

77. Each and every allegation of the preceding paragraphs is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

78. At all times herein relevant, Defendants owed Representative Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendants took on this obligation upon accepting and storing the PII of Representative Plaintiff and Class Members in their computer systems and on their networks.

79. Among these duties, Defendants were expected:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in their possession;

b. to protect Representative Plaintiff's and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c. to implement processes to quickly detect the Data Breach and to timely act on warnings about data breaches; and

d. to promptly notify Representative Plaintiff and Class Members of any data breach, security incident or intrusion that affected or may have affected their PII.

80.     Defendants knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendants owed a duty of care not to subject Representative Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

81.     Defendants knew or should have known of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems and the importance of adequate security. Defendants knew about numerous, well-publicized data breaches.

82.     Defendants knew or should have known that their data systems and networks did not adequately safeguard Representative Plaintiff's and Class Members' PII.

83.     Only Defendants were in the position to ensure that their systems and protocols were sufficient to protect the PII that Representative Plaintiff and Class Members had entrusted to them.

84.     Defendants breached their duties to Representative Plaintiff and Class Members by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard the PII of Representative Plaintiff and Class Members.

85.     Because Defendants knew that a breach of their systems could damage thousands of individuals, including Representative Plaintiff and Class Members, Defendants had a duty to adequately protect their data systems and the PII contained thereon.

86.     Representative Plaintiff's and Class Members' willingness to entrust Defendants with their PII was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect their systems and the PII they stored on them from attack. Thus, Defendants had a special relationship with Representative Plaintiff and Class Members.

87.     Defendants also had independent duties under state and federal laws that required Defendants to reasonably safeguard Representative Plaintiff's and Class Members' PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendants and Representative Plaintiff and/or the remaining Class Members.

88.     Defendants breached their general duty of care to Representative Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a.     by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard the PII of Representative Plaintiff and Class Members;

b.     by failing to timely and accurately disclose that Representative Plaintiff's and Class Members' PII had been improperly acquired or accessed;

c.     by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks and by allowing unmonitored and unrestricted access to unsecured PII;

d.     by failing to provide adequate supervision and oversight of the PII and financial information with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Representative Plaintiff and Class Members, misuse the PII and intentionally disclose it to others without consent.

e.     by failing to adequately train their employees to not store PII longer than absolutely necessary;

-22-

f.     by failing to consistently enforce security policies aimed at protecting Representative Plaintiff's and the Class Members' PII;

g.     by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h.     by failing to encrypt Representative Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

89.     Defendants' willful failure to abide by these duties was wrongful, reckless and grossly negligent in light of the foreseeable risks and known threats.

90.     As a proximate and foreseeable result of Defendants' grossly negligent conduct, Representative Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

91.     The law further imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of the PII to Representative Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of its PII.

92.     Defendants breached their duty to notify Representative Plaintiff and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify Representative Plaintiff and Class Members and then by failing and continuing to fail to provide Representative Plaintiff and Class Members sufficient information regarding the breach. To date, Defendants have not provided sufficient information to Representative Plaintiff and Class

-23-

Members regarding the extent of the unauthorized access and continues to breach their disclosure obligations to Representative Plaintiff and Class Members.

93.     Further, through their failure to provide timely and clear notification of the Data Breach to Representative Plaintiff and Class Members, Defendants prevented Representative Plaintiff and Class Members from taking meaningful, proactive steps to secure their PII.

94.     There is a causal connection between Defendants' failure to implement security measures to protect the PII of Representative Plaintiff and Class Members and the harm suffered or risk of imminent harm suffered by Representative Plaintiff and Class Members. Representative Plaintiff's and Class Members' PII was accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII by adopting, implementing and maintaining appropriate security measures.

95.     Defendants' wrongful actions, inactions and omissions constituted common law negligence.

96.     The damages Representative Plaintiff and Class Members have suffered and will continue to suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

97.     Additionally, 15 U.S.C. §45 (FTC Act, Section 5) prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

98.     Defendants violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.

Defendants' conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiff and Class Members.

99. Defendants had a duty to employ reasonable security measures and otherwise protect the PII of Plaintiffs and Class Members pursuant to Tenn. Code. §§ 47- 18-2105 to 2107 (2005).

100. Defendants had a duty to employ reasonable security measures and otherwise protect the PII of Plaintiffs and Class Members pursuant to Tenn. Code. § 47-18- 2110 (2018).

101. Defendants had a duty to employ reasonable security measures and otherwise protect the PII of Plaintiffs and Class Members pursuant to Tenn. Code. § 39-14- 150(G).

102. Defendants systematically failed to provide adequate security for data in their possession.

103. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within their possession.

104. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

105. Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiffs and Class Members that the PII within their possession might have been compromised and precisely the type of information compromised.

106. Defendants' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

107.     As a direct and proximate result of Defendants' negligence, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to:

    a.      actual identity theft;

    b.      the loss of the opportunity of how its PII is used;

    c.      the compromise, publication and/or theft of their PII;

    d.      out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud and/or unauthorized use of their PII;

    e.      lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach including but not limited to efforts spent researching how to prevent, detect, contest and recover from embarrassment and identity theft;

    f.      the continued risk to their PII, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' PII in their continued possession; and

    g.      future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact of the compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

108.     As a direct and proximate result of Defendants' negligence, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm,

including but not limited to anxiety, emotional distress, loss of privacy and other economic and non-economic losses.

109.     Additionally, as a direct and proximate result of Defendants' negligence, Representative Plaintiff and Class Members have suffered and will continue to suffer the continued risks of exposure of their PII, which remain in Defendants' possession and are subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their continued possession.

## SECOND CLAIM FOR RELIEF
### Breach of Confidence
### (On behalf of the Nationwide Class)

110.     Each and every allegation of the preceding paragraphs is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

111.     At all times during Representative Plaintiff's and Class Members' interactions with Defendants, Defendants were fully aware of the confidential nature of the PII that Representative Plaintiff and Class Members provided to them.

112.     As alleged herein and above, Defendants' relationship with Representative Plaintiff and the Classes was governed by promises and expectations that Representative Plaintiff and Class Members' PII would be collected, stored and protected in confidence and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties.

113.     Representative Plaintiff and Class Members provided their respective PII to Defendant with the explicit and implicit understandings that Defendants would protect and not

permit the PII to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties.

114. Representative Plaintiff and Class Members also provided their PII to Defendants with the explicit and implicit understanding that Defendants would take precautions to protect their PII from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use and/or viewing, such as following basic principles of protecting their networks and data systems.

115. Defendants voluntarily received, in confidence, Representative Plaintiff's and Class Members' PII with the understanding that the PII would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by the public or any unauthorized third parties.

116. Due to Defendants' failure to prevent, detect and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Representative Plaintiff's and Class Members' PII, Representative Plaintiff's and Class Members' PII was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties beyond Representative Plaintiff's and Class Members' confidence and without their express permission.

117. As a direct and proximate cause of Defendants' actions and/or omissions, Representative Plaintiff and Class Members have suffered damages.

118. But for Defendants' failure to maintain and protect Representative Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties. The Data Breach was

the direct and legal cause of the misuse of Representative Plaintiff's and Class Members' PII as well as the resulting damages.

119. The injury and harm Representative Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendants' unauthorized misuse of Representative Plaintiff's and Class Members' PII. Defendants knew their data systems and protocols for accepting and securing Representative Plaintiff's and Class Members' PII had security and other vulnerabilities that placed Representative Plaintiff's and Class Members' PII in jeopardy.

120. As a direct and proximate result of Defendants' breaches of confidence, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, as alleged herein, including but not limited to (a) actual identity theft, (b) the compromise, publication and/or theft of their PII, (c) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft and/or unauthorized use of their PII, (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft, (e) the continued risk to its PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Class Members' PII in its continued possession, (f) future costs in terms of time, effort and money that will be expended as result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members, (g) the diminished value of Representative Plaintiff's and Class Members' PII, and (h) the diminished value of Defendants' services for which Representative Plaintiff and Class Members paid and received.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Contract
### (On behalf of the Nationwide Class)

121.    Each and every allegation of the preceding paragraphs is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

122.    Through its course of conduct, Defendants, Representative Plaintiff and Class Members entered into implied contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' PII.

123.    Defendants required Representative Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining Defendants' services.

124.    Defendants solicited and invited Representative Plaintiff and Class Members to provide their PII as part of Defendants' regular business practices. Representative Plaintiff and Class Members accepted Defendants' offers and provided their PII to Defendants.

125.    Representative Plaintiff and Class Members provided and entrusted their PII to Defendants. In so doing, Representative Plaintiff and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Representative Plaintiff and Class Members if their data had been breached and compromised or stolen.

126.    A meeting of the minds occurred when Representative Plaintiff and Class Members agreed to and did provide their PII to Defendants, in exchange for, amongst other things, the protection of their PII.

127.    Representative Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendants.

---

128.    Defendants breached the implied contracts they made with Representative Plaintiff and Class Members by failing to safeguard and protect its PII and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

129.    As a direct and proximate result of Defendants' above-described breach of implied contract, Representative Plaintiff and Class Members have suffered and will continue to suffer (a) ongoing, imminent and impending threat of identity theft crimes, fraud and abuse resulting in monetary loss and economic harm, (b) actual identity theft crimes, fraud and abuse resulting in monetary loss and economic harm, (c) loss of the confidentiality of the stolen confidential data, (d) the illegal sale of the compromised data on the dark web, (e) lost work time, and (f) other economic and non-economic harm.

### FOURTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Nationwide Class)

130.    Each and every allegation of the preceding paragraphs is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

131.    Every contract in this State has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

132.    Representative Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendants.

133.    Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Representative Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendants knew

or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

134.    Defendants acted in bad faith and/or with malicious motive in denying Representative Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## RELIEF SOUGHT

**WHEREFORE,** Representative Plaintiff, on behalf of himself and each member of the proposed Class, respectfully requests that the Court enter judgment in his favor and for the following specific relief against Defendants as follows:

1.    That the Court declare, adjudge and decree that this action is a proper class action and certify each of the proposed Classes and/or any other appropriate Subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiff's counsel as Class Counsel;

2.    For an award of damages including actual, nominal and consequential damages, as allowed by law in an amount to be determined;

3.    That the Court enjoin Defendants, ordering them to cease and desist from unlawful activities;

4.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiff's and Class Members' PII and from refusing to issue prompt, complete any accurate disclosures to Representative Plaintiff and Class Members;

5.     For injunctive relief requested by Representative Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiff and Class Members including but not limited to an Order:

    a.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    b.    requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    c.    requiring Defendants to delete and purge the PII of Representative Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiff and Class Members;

    d.    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiff's and Class Members' PII;

    e.    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests and audits on Defendants' systems on a periodic basis;

    f.    prohibiting Defendants from maintaining Representative Plaintiff's and Class Members' PII on a cloud-based database;

g.   requiring Defendants to segment data by creating firewalls and access controls so that, if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems.

h.   requiring Defendants to conduct regular database scanning and securing checks;

i.   requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII as well as protecting the PII of Representative Plaintiff and Class Members;

j.   requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs as well as randomly and periodically testing employees' compliance with Defendants' policies, programs and systems for protecting personal identifying information:

k.   requiring Defendants to implement, maintain, review and revise as necessary a threat management program to appropriately monitor Defendants' networks for internal and external threats, and assess whether monitoring tools are properly configured, tested and updated;

l.   requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.      For prejudgment interest on all amounts awarded at the prevailing legal rate;

7.      For an award of attorneys' fees, costs and litigation expenses, as allowed by law;

8.      For all other Orders, findings and determinations identified and sought in this Complaint.

## JURY DEMAND

Representative Plaintiff, individually, and on behalf of the Class hereby demands a trial by jury for all issues triable by jury.

Date: May 31, 2023

Respectfully Submitted,

*/s/ Joseph M. Lyon*
**THE LYON LAW FIRM**
Joseph M. Lyon
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
Email: jlyon@thelyonfirm.com

*/s/ Cody A. Bolce*
**COLE & VAN NOTE**
Cody A. Bolce, Esq.* (CA S.B. #322725)
555 12th Street, Suite 1725
Oakland, CA 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: cab@colevannote.com

*/s/ Daniel Srourian*
**SROURIAN LAW FIRM, P.C.**
Daniel Srourian* (CA S.B. #160744)
3435 Wilshire Blvd., Suite 1710
Los Angeles, CA 90010
Telephone: (213) 474-3800
Email: daniel@slfla.com

Attorneys for Representative Plaintiff David Knighten and the Plaintiff Class

*Pro hac vice forthcoming*

-36-