## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **AMBER HANEY, JASON EVANS, MCKENNIA FITCH, DAVID KNIGHTEN and CHRISTIE STINSON,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CHARTER FOODS NORTH, LLC, and CHARTER FOODS, INC.,**<br><br>Defendants. | **Case No. 2:23-cv-00046-TRM-CRW** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE AND SCHEDULING OF A FINAL APPROVAL HEARING

## I. INTRODUCTION

Plaintiffs Amber Haney, Jason Evans, McKenna Fitch, David Knighten and Christie Stinson ("Plaintiffs") move for preliminary approval of the Settlement[1] they have reached with Defendants Charter Foods North, LLC, Charter Central, LLC, and Charter Foods, Inc. (collectively, "Charter Foods" or "Defendants") (collectively, the "Parties"). The Parties reached a proposed settlement that, if approved by the Court, will resolve Plaintiffs' and Class Members' claims against Charter Foods arising from the cyber security incident at issue in this litigation. In support of this Memorandum, Plaintiffs submit herewith the Settlement Agreement as **Exhibit 1** and a Joint Declaration of Class Counsel as **Exhibit 2**.

This case arises from a cyber security incident on or around January 13, 2023, (the "Data Incident") that Plaintiffs allege compromised the security of their personally identifiable information ("PII"). Joint Declaration of Class Counsel ("Counsel Decl.") ¶ 7. After extensive arm's-length negotiations, the Parties negotiated a Settlement that provides significant relief for Plaintiffs and the Class Members they seek to represent. *Id.* at ¶ 10. The Court should grant preliminary approval of the proposed Settlement because it addresses the reasonable objectives of the litigation, without the uncertainties that Class Members would otherwise face in continued litigation, and because the Settlement is fair and reasonable.

## II. SUMMARY OF THE LITIGATION

Defendants discovered this intrusion and on April 7, 2023 and sent notice of the Data Incident to approximately 109,194 individuals. *Id.* Plaintiff Amber Haney filed her Complaint on May 10, 2023, seeking to recover damages on behalf of herself and a class of other similarly situated current and former Charter Foods employees (the "Class Members"). *Id.* at ¶ 8. On June

---

[1] Unless defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement.

20, 2023, Plaintiff McKennia Fitch filed her Complaint raising similar allegations against Defendants. *Id.* After the Haney Action and the Fitch Action were consolidated, a Consolidated Complaint was filed on November 15, 2023, by Plaintiffs Haney and McKennia, along with Plaintiff Jason Evans. *Id.* Plaintiffs Knighten and Stinson were added to the "Litigation" (defined below) through the Second Consolidated Class Action Complaint filed on May 20, 2024 (ECF No. 54) (referred to herein as the "Complaint"). *Id.*

The Parties participated in three mediation conferences to settle this case. *Id.* at ¶ 9. The first two Mediations were unsuccessful. *Id.* The third Mediation took place on November 18, 2024, before Mediator Mike Ungar, and although an agreement was still not reached on that date, following the Mediation Mr. Ungar suggested a Mediator's Proposal. *Id.* Both Parties accepted the Mediator's Proposal, which was memorialized in the attached Settlement Agreement. *Id.*

## III.     SUMMARY OF SETTLEMENT

The Settlement negotiated on behalf of the class provides for the creation of a $807,500.00 non-reversionary Settlement Fund. SA ¶ 1.37. The Settlement Fund shall be used by the Settlement Administrator to pay the following: (i) Costs of Settlement Administration; (ii) Taxes and Tax-Related Expenses; (iii) Service Awards; (iv) Fee Award and Costs; and (v) the Settlement Benefits elected by Settlement Class Members who submit valid and timely Settlement Claim pursuant to the terms of this Settlement. *Id.* ¶ 2.1(d).

### A.     The Settlement Class

The Settlement Class is defined as "all persons in the United States whose information may have been impacted in the Data Incident, including persons to whom Defendants mailed a notification that their information may have been impacted in the Data Incident." SA ¶ 1.33. The Settlement Class specifically excludes: (i) Defendants and its respective officers and directors; (ii)

all members of the Settlement Class who timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge." *Id.*

## B. The Settlement Benefits

### 1. Settlement Fund

The Settlement Fund shall be used to pay the cost of providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such Notice, together with the Costs of Settlement Administration, shall be paid from the Settlement Fund. Fee Award and Costs for Settlement Class Counsel, and Service Awards to Representative Plaintiffs, as approved by the Court, shall also be paid from the Settlement Fund as set forth in Paragraphs 7.2, 7.3 and 7.4 of the Settlement Agreement. *Id.* ¶ 3.3.

### 2. Settlement Payments

Each Settlement Class Member who submits a valid/timely Claim Form may qualify for:

(a)   Documented Loss Fund. The Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) reasonable documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement.

(b)   Non-Documented Pour-Over Fund. Following the distribution of Administrative Expenses, Service Awards, Out-of-Pocket Expense Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, the Settlement Administrator will make a pro rata cash payment from the remaining Settlement fund to each Class Member who submits a valid claim, as determined by the Settlement Administrator in accordance with the

3

Settlement Agreement or, if applicable, the dispute resolution process therein, so long as the funds are available.

*Id.* ¶ 2.2.

3.   Business Practices Changes

Plaintiffs have received assurances that Defendants have implemented or will implement certain reasonable steps to adequately secure its systems and environments presently and in the future. *Id*. ¶ 2.4. One of the Plaintiffs' principal objectives in filing this litigation was to compel a change in Defendants' cybersecurity practices, so obtaining these assurances achieves their goal, and adds to the overall value of the settlement.

4.   Settlement Expenses

All costs for notice to the Settlement Class and the Costs of Settlement Administration shall be paid out of the Settlement Fund. *Id.* ¶ 2.6, 3.3-3.4, 8.

**C.   The Notice and Claims Process**

1.   Notice

Subject to the Court's approval, Notice shall be provided to Settlement Class Members by the Settlement Administrator as follows:

(a)   *Class Member Information*: No later than seven (7) days after entry of the Preliminary Approval Order, Defendants shall provide the Settlement Administrator with the name, email address (where available), and last known physical address of each Settlement Class Member (collectively, "Class Member Information") that Defendants possess.

(b)   *Settlement Website*: Prior to the dissemination of the Short Form Notice, the Settlement Administrator shall establish the Settlement Website that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement; (v) the operative Complaint filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall

4

provide Class Members with the ability to complete and submit the Claim Form electronically.

(c)     *Short and Email Notice*: Within fifteen (15) days after the entry of the Preliminary Approval Order, and to be substantially completed not later than thirty (30) days after entry of the Preliminary Approval Order, and subject to the requirements of the Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide notice to the Settlement Class as follows:

   i.     To all Settlement Class Members for whom Defendants are in possession of an email address, via email by sending the Email Notice to the email addresses provided to the Settlement Administrator by Defendants;

   ii.    To all Settlement Class Members for whom Defendants do not have in their possession a valid email address (including email addresses that were returned as undeliverable), via mail by sending the Short Notice to the postal address provided to the Settlement Administrator by Defendants. Before any mailing under this Paragraph occurs, the Settlement Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

   iii.   In the event that a mailed Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice;

   iv.    In the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Short Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing.

(d)    Publishing, on or before the Notice Commencement Date, the Claim Form and Long Notice on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the claim period;

(e)    A toll-free help line shall be made available to provide Settlement Class Members with additional information about the settlement. The Settlement Administrator also will provide copies of the forms of Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request; and

(f)    Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel and Defendants shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

*Id.* ¶ 3.3.

The Short Notice, Email Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Settlement Administrator, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. *Id.* ¶ 3.4. The Notice Program shall commence within fifteen (15) days after entry of the Preliminary Approval Order and shall be substantially completed within thirty (30) days after entry of the Preliminary Approval Order. *Id.*

      2.    Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. Class Members will have ninety (90) days from the Notice Deadline to complete and submit a claim to the Claims Administrator. *Id.* ¶ 1.4. The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it.

### 3. Requests for Exclusion and Objections

Class Members will have up to and including sixty (60) days after the Notice Commencement Date to decide whether to object to or exclude themselves from the Settlement. *Id.* ¶ 4.1. Similar to the timing of the claims process, the timing with regard to objections and exclusions is structured to give Class Members sufficient time to review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days before the deadline for Class Members to object or exclude themselves from the Settlement. *See id.* ¶¶ 4.1, 7.1.

Any Class Member wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. *Id.* ¶ 4.1. The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class. To be effective, written notice must be postmarked no later than sixty (60) days after the Notice Commencement Date. *Id.* All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in Paragraph 4.1, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. *Id.* ¶ 4.2.

Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state:

> (i) the objector's full name and address; (ii) the case name and docket number—*Haney v. Charter Foods North, LLC*, Case No. 2:23-cv-46 (ED. TN); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable and any supporting documents; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing, and; (vi) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date

no later than sixty (60) days from the Notice Commencement Date to the Settlement Administrator at a designated post office box, as well as to Proposed Settlement Class Counsel.

*Id.* ¶ 5.1.

### 4. Fees and Costs

Charter Foods agreed that Plaintiffs may request, subject to Court approval, up to $266,475.00, or 33.33% of the Settlement Fund to proposed Class Counsel for attorneys' fees, in addition to the costs and expenses incurred in connection with the prosecution of this matter. *Id.* ¶ 7.2. Proposed Class Counsel will submit a separate motion seeking attorneys' fees and costs 14 days before the Objection Date. *Id.* ¶ 7.1. Plaintiffs are informed that Charter Foods agree that a fee and cost award of 33.33 percent of the Settlement Fund to be paid out of that fund is reasonable, based upon the work performed by Plaintiffs' counsel to date – i.e., due diligence, consolidation of several matters into one matter, opposing a dispositive motion, engaging in discovery, and participating in three mediations.

## IV.    LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. As the trial court, this court has discretion in determining the fairness of the proposed plan. *Laskey v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 638 F.2d 954, 957 (6th Cir.1981). While the Supreme Court has instructed that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), in the context of a proposed settlement class, the requisite "rigorous analysis" of the record and consideration of the merits must be focused on and limited to the question whether Rule 23's

requirements have been established. *In re Whirlpool Corp. Front- Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013).

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *See Fitzgerald v. P.L. Mktg., Inc.*, 2020 WL 7764969, at *6 (W.D. Tenn. Feb. 13, 2020) ("Public policy favors settlement of class actions."); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996) ("The law favors settlement. It is indeed the preferred means of dispute resolution, particularly in complex class action litigation such as this. Voluntary resolution is in the public interest.").

Cybersecurity incident class actions are regularly certified for settlement in district courts across the country. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part*, 999 F.3d 1247 (11th Cir. 2021); *In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022); *Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-CV-1386-VMC-CPT, 2021 WL 3773414, at *6 (M.D. Fla. Aug. 25, 2021).

## V.    ARGUMENT

### A.    The Court Should Preliminarily Approve, for Purposes of Settlement, the Certification of the Class.

Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to ... certify the class for purposes of judgment on the proposal." *Jones v. Varsity Brands, LLC*, 2024 WL 3049464, at *5 (W.D. Tenn. June 18, 2024). "If the court determines that it will likely be able to certify the class, it conditionally certifies it pending final

approval of the settlement." *Id.* (citing Newberg on Class Actions § 13:16 (5th ed. 2019)). "Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g)." *Id.*

        1.    <u>The Settlement Meets the Requirements of Rule 23(a).</u>

        i.    *The Class is So Numerous that Joinder of all Members is Impracticable.*

When analyzing numerosity, a district court uses its common sense. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Id.* (internal citations omitted). Only a "reasonable estimate" is required to establish numerosity. *Bentley v. Honeywell Intern., Inc.*, 223 F.R.D. 471, 480 (S.D. Ohio 2004). Here, Defendants mailed notice of the Data Incident to 109,194 individuals. The joinder of even one percent of these proposed Class members would certainly be impracticable. The numerosity requirement is thus satisfied.

        ii.    *There are Questions of Law and Fact Common to the Class.*

The second prerequisite to certification is that there exist questions of law or fact common to the class. Rule 23(a)(2). The Class must have at least one common question of law or fact, and resolution of those questions must advance the litigation. Fed. R. Civ. P. 23(a)(2); *Alkire v. Irving*, 330 F.3d 802, 821 (6th Cir. 2003) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). "Even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up). Courts have previously addressed this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. Aug. 15, 2018) (noting that the complaint contains a common contention capable of class-wide resolution).

Here, too, the commonality requirement is readily satisfied, as Plaintiffs and the Settlement Class Members all have common questions of law and fact that arise out of the same event—the Data Incident. Specifically, Plaintiffs have alleged, *inter alia*, that the following questions of law and fact are common to the class:

1.  Whether Defendants engaged in the conduct alleged herein;

2.  Whether Defendants' response to the Data Breach was adequate;

3.  Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

4.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

5.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

6.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

7.  Whether Defendants owed a duty to Class Members to safeguard their Private Information;

8.  Whether Defendants breached their duty to Class Members to safeguard their Private Information;

9.  Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

10. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

11. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

12. Whether Defendants' conduct was negligent;

13. Whether Defendants were unjustly enriched.

As in other cybersecurity incident cases, these common issues all center on Defendants' conduct, or other facts and law applicable to all Class Members, thus satisfying the commonality requirement. *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution.").

        *iii.*     *The Claims and Defenses of Plaintiffs are Typical of the Claims and Defenses of the Class.*

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quotation marks and citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* "[F]or the district court to conclude that the typicality requirement is satisfied, "a representative's claims need not always involve the same facts or law, provided there is a common element of fact or law." *Gaynor v. Miller*, 2018 WL 375606, at *9 (E.D. Tenn. Aug. 6, 2018).

Here, the typicality requirement is satisfied as Plaintiffs' claims are typical of those of the other Settlement Class Members because they arise from the same Data Incident and are based on the same legal theory. Because there is a "strong similarity of legal theories" between Plaintiffs' claims and the claims of the Settlement Class Members, the typicality requirement is satisfied.

> iv. *Plaintiffs will fairly and adequately protect the interests of the Class.*

Rule 23(a)(4) requires that Plaintiffs fairly and adequately protect the interest of the Class. "The Rule 23(a)(4) inquiry serves to uncover conflicts of interest between named parties and the classes they seek to represent." *Jones*, 2024 WL 3049464, at *6. "A class representative must be part of the class and possess the same interest and suffer the same injury as class members." *Id.* (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007)) (internal quotation marks omitted). Class members must not have "interests that are [ ] antagonistic to one another." *Id.* Courts also "review[ ] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id.* (quoting *Young*, 693 F.3d at 543).

As for the first prong, the Plaintiffs are members of the Class and do not possess any interests antagonistic to the Class. They allege that their personal information was compromised as a result of the same Data Incident. Indeed, Plaintiffs' claims coincide identically with the claims of the Class and each desire the same outcome of this litigation. Plaintiffs have vigorously prosecuted these cases for the benefit of all Class Members and participated in the litigation, reviewed pleadings, and participated in the factual investigation of the case.

The second prong is also met. Settlement Class Counsel has extensive experience in class actions generally, and, in particular, data breach class actions. Counsel Decl. ¶¶ 18-23. Because Plaintiffs and their counsel possess substantial experience and track records in similar litigation and have vigorously prosecuted the case, the adequacy requirement is satisfied.

## 2. The Proposed Class Meets the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a settlement class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must predominate over

any questions affecting only individual members, and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). In a settlement class situation, the Court does not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

> i. *Common Issues Predominate Over Individualized Ones in this Matter.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation marks and citation omitted). Lastly, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.*

Common issues readily predominate here because the central liability question for Plaintiffs and Class Members is whether Defendants failed to safeguard personal information. *See Beattie*, 511 F.3d at 564. Several case-dispositive questions can be resolved identically for all members of the Class, such as whether Defendants have a duty to exercise reasonable care in safeguarding, securing and protecting the personal information of Plaintiffs and Class Members and whether they breached that duty. The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues.

Other courts have recognized that these types of common issues arising from a cybersecurity incident predominate over individualized issues. *See, e.g.*, *In re Countrywide Fin.*

*Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal information); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct").

ii. *Class treatment is superior to individual litigation.*

Finally, a class action is superior to other methods available to resolve the claims of the proposed Class fairly, adequately, and efficiently. As the Sixth Circuit has explained, "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Hicks v. State Farm Fire & Cas. Co.*, 2019 WL 846044, at *6 (E.D. Ky. Feb. 21, 2019), *aff'd and remanded*, 2020 WL 3888156 (6th Cir. July 10, 2020) (citing *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at 617). Where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* (internal quotation marks and citations omitted).

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Indeed, absent class treatment, each Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no

15

indication that Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the relatively small amount of damages likely to be recovered by each Class Member relative to the resources required to prosecute such an action. *See Amchem*, 521 at 617 (stating that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Additionally, the proposed Settlement will give the Parties the benefit of finality, and because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating hundreds of thousands of individual data breach cases arising out of the *same* Data Incident.

As the superiority requirement is satisfied, along with all other requirements of Rule 23, the Court should certify the Class.

### 3. Settlement Class Counsel should be appointed Class Counsel.

In appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court appointed Settlement Class Counsel as Interim Co-Lead Class Counsel and Liaison Counsel based on their qualifications and experience. (ECF 61.) Since then, Interim Co-Lead and Liaison Counsel have worked cooperatively and efficiently and committed substantial time and resources to this case. This work has included (1) investigating the data breach, (2) researching and evaluating the appropriate legal

claims to assert, (3) interviewing potential class representatives about their experiences, (4) working with other counsel to achieve consolidation, (5) preparing and filing a consolidated class action complaint, (6) opposing the motion to dismiss, (7) engaging in informal discovery with Defendants in advance of the mediation; (8) participating in three mediation sessions and subsequent settlement discussions, and (9) negotiating the proposed settlement, preparing the settlement documentation, and moving for preliminary approval. Counsel Decl., ¶¶ . Because Interim Co-Lead and Liaison Counsel have demonstrated their commitment to litigating these claims, the Court should appoint as Co-Lead Class Counsel Siri & Glimstad LLP, Morgan & Morgan, P.A., and Cole & Van Note, and appoint as Liaison Counsel Lisa A. White of Mason LLP.

**B.     The Settlement Warrants Preliminary Approval Pursuant to Rule 23(e).**

The Settlement Agreement is fair, reasonable, and adequate — resulting from extensive, arm's length negotiations by experienced counsel. In 2018, Rule 23(e) was amended to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified. In the context of preliminary approval, the amendments direct putative class counsel to provide the court with information sufficient to enable the court to determine that the settlement is fair, reasonable and adequate; that certification for purposes of settlement is warranted; and that notice is justified because the court will likely grant final approval to the settlement. These amendments largely mirror current practice under applicable law. As discussed below, courts in the Sixth Circuit have applied similar principles as part of the analysis of preliminary approval motions for many years. All such factors weigh in favor of preliminary approval here.

According to the amendments to Rule 23, before notice can issue, the putative class representative must demonstrate "that the Court will likely be able to" approve the settlement

under Rule 23(e)(2); and (ii) "certify the class for purposes of judgment" arising from the settlement. Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

the terms of any proposed award of attorney's fees, including timing of payment;

>> (iii)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each other.

*Busby v. Bonner*, 2021 WL 4127775, at *2–3 (W.D. Tenn. Jan. 28, 2021) (citing Fed. R. Civ. P. 23(e)(2)(A)-(D)).

Additionally, courts also look to circuit-specific factors. The Sixth Circuit instructs courts to assess:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th. Cir. 2007)). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011) (quotation marks and citations omitted).

18

As set forth below, preliminary consideration of the Rule 23(e) factors and Sixth Circuit factors supports preliminary approval here.

### 1. Adequate Representation and Arm's Length Negotiation

"The first two factors under Rule 23(e)(2)—adequate representation and whether the proposal was negotiated at arm's length—'identify matters that might be described as 'procedural' concerns.'" *Busby*, 2021 WL 4127775 at *3 (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes). "[T]he focus at this point is on the actual performance of counsel acting on behalf of the class." *Id.* (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

As set forth above and demonstrated in their Memorandum in Support of Plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel and Liaison Counsel (ECF 58), Settlement Counsel have extensive experience in litigating cybersecurity incident cases. Before filing the Complaint, they devoted significant time to investigating the facts related to the Data Incident and Charter Foods' subsequent response. Counsel also extensively researched potential claims under the laws of Tennessee. After filing the Complaint, Counsel opposed the motion to dismiss and engaged in protracted negotiations with Charter Foods' Counsel over the potential scope of discovery and settlement terms. This work, combined with their experience in successfully prosecuting similar data breach cases, gave Plaintiffs' Counsel the ability to negotiate the best relief possible for the Class. Moreover, Counsel's experience and investigation, combined with the informal exchange of information that occurred during negotiations, put Plaintiffs in a position to proficiently evaluate the case and negotiate a settlement they view as fair, reasonable, and adequate, and worthy of preliminary approval.

The Parties' attempts to resolve this litigation were appropriately adversarial and protracted, requiring the assistance of more than one mediator. Even after their third attempt at

mediation, the Parties could not reach agreement. Ultimately, both Parties agreed to allow the Mediator to make his own proposal, based on his evaluation of the respective strengths and weaknesses of each Party's case. The fact that the settlement is the result of an independent mediator's objective proposal reflects the arm's-length nature of the settlement negotiations and lends support to the conclusion that the settlement is fair and reasonable. *See* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes ("The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Busby*, 2021 WL 4127775 at *4 (finding that a settlement that was "the product of three mediation sessions with a third-party mediator" was evidence that it was negotiated at arm's length); *Fitzgerald*, 2020 WL 7764969 at *11 (granting preliminary approval of class action settlement where adversarial negotiations lasted more than a year and was the product of two mediation sessions with a third-party mediator). In light of the Settlement process, there is no risk of fraud or collusion in this case.

2. <u>The Relief Provided for the Class Is Adequate Considering the Complexity, Expense, Likely Duration of Litigation, and Likelihood of Success on the Merits</u>

The Settlement Fund of $807,500.00 allows for Class Members with documented losses resulting from the Data Incident to receive a Settlement Payment of up to $5,000 for reimbursement of those losses upon the submission of reasonable documentation. After payments are made for documented losses and following the distribution of Administrative Expenses, Service Awards, Out-of-Pocket Expense Claims, Attorneys' Fees and Class Counsel's Litigation Expenses (as approved by the Court), the Settlement Administrator will make a *pro rata* cash payment from the remaining Settlement fund to each Class Member who submits a valid claim, so

long as the funds are available. The amount of attorneys' fees will be decided by the Court upon the submission of Settlement Counsel's motion, and that motion will be submitted no later than 14 days before the Opt-Out and Objection deadlines, giving Class Members the opportunity to opt-out of the Settlement or object to it on that or any other basis.

Plaintiffs have also received assurances that Charter Foods will change its cybersecurity practices, which was one of Plaintiffs' primary objectives in filing this litigation. Though the value of getting Charter Foods to change its cybersecurity practices cannot be quantified, it is a significant form of relief that adds overall value to the Settlement.

Critically, the value achieved through the Settlement Agreement is guaranteed, whereas Plaintiffs' chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Charter Foods will assert a number of potentially case-dispositive defenses should litigation continue. Due at least in part to their cutting-edge nature and the rapidly evolving law, cybersecurity cases like this one generally face substantial hurdles to make it to trial. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). As one federal district court recently observed in finally approving a settlement with similar class relief: "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021); *see Gordon v. Chipotle Mexican Grill, Inc*., 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, cybersecurity incident cases are among the riskiest and uncertain of all class action litigation,

making settlement the more prudent course when a reasonable one can be reached. Although Plaintiffs believe their damages methodologies are sound, because so few cybersecurity cases have made it to trial, those methodologies remain untested in a disputed class certification setting and unproven in front of a jury.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Charter Foods, as well as the risks inherent to continued litigation. Charter Foods has consistently denied the allegations raised by Plaintiffs and made clear at the outset that they would vigorously defend the case. The proposed Settlement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

3.    The Proposal Treats Class Members Equitably Relative to Each Other

In evaluating whether the proposal treats class members equitably relative to each other, "[t]he court should particularly evaluate 'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Robles v. Comtrak Logistics, Inc.*, 2022 WL 17672639, at *10 (W.D. Tenn. Dec. 14, 2022) (quoting Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's note to 2018 amendment). Here, all Class Members are treated equitably relative to each other. Those Class Members with documented losses are able to recover in the amount of those losses up to $5,000. All those Class Members who cannot document their losses will receive equal *pro rata* shares from the Non-Documented Pour-Over Fund.

Although the five named Plaintiffs will each receive Service Awards in the amount of $5,000 apiece (SA ¶ 7.4), this presents no concerns from an equitable perspective. "[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives

and rewarding individual efforts taken on behalf of the class," in recognition "that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole." *Hadix v. Johnson*, 322 F.3d 895, 897, 898 (6th Cir. 2003).

### 4.    The Public Interest Supports the Settlement

"Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Humphrey v. Stored Value Cards*, 2021 WL 110786, at *6 (N.D. Ohio Jan. 12, 2021) In this case, the settlement agreement will end more than a year and a half of litigation and provide the Class Members with meaningful relief. *Id.*

### C.    The Proposed Notice Plan Should Be Approved.

Rule 23(e) provides "notice of the proposed . . . compromise shall be given to all members of the class in such a manner as the court directs." Due process requires provision of the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B). The Notice Program provided for by the Settlement Agreement satisfies the requirements of Rule 23 and due process and is designed to be the best practicable and to meet all the criteria set forth by the *Manual for Complex Litigation*.

Here, notice shall be provided to Class Members via email to all Settlement Class Members for whom Defendants is in possession of an email address, and by direct mail to the postal address in Charter Foods' records to all Settlement Class Members for whom Defendants do not have an email in its possession (including email addresses that were returned as undeliverable). SA ¶ 3.3(c). In addition to this individualized and direct mailing, Charter Foods has also agreed to have the Settlement Administrator establish and maintain a settlement website through which Settlement Class Members can receive additional information about the Settlement. SA ¶ 3.3(b).

The notices are clear and straightforward. They define the Class; clearly describe the options available to Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the amount that proposed Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or opting out; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel.

The Notice Plan here is designed to be the best practicable under the circumstances, apprise Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the Settlement. *See Kain v. Economist Newspaper NA, Inc.*, 2023 WL 2563679, at *1 (E.D. Mich. Mar. 16, 2023) (holding that direct notice via U.S. mail or email and the creation of a settlement website "fully complied with the requirements of Fed. R. Civ. P. 23 and due process, was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing"); *Raden v. Martha Stewart Living Omnimedia, Inc.*, 2019 WL 3530822, at *1 (E.D. Mich. Aug. 2, 2019) (same). Accordingly, this Court should approve the Notice process.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of payments for documented and undocumented losses resulting from the Data Incident. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: January 14, 2025                    Respectfully submitted,

By: *Scott E. Cole*
Scott E. Cole
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
Email: tbean@sirillp.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 North Franklin Street 7th Floor Tampa,
Florida 33602
Telephone: (813) 223-5505
Email:  JYanchunis@forthepeople.com

Lisa A. White
**MASON LLP**
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Telephone: (202) 470-6213
Email: lwhite@masonllp.com

***Attorneys for Plaintiffs and
the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that, on January 14, 2025 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

*/s/ Scott Edward Cole*
Scott Edward Cole, Esq.