**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT GREENVILLE**

| | |
|---|---|
| **AMBER HANEY**, **JASON EVANS**, **MCKENNIA FITCH**, **DAVID KNIGHTEN**, and **CHRISTIE STINSON**, individually and on behalf of all similarly situated, | Lead Case No. 2:23-cv-46-TRM-CRW |
| | Member Case Nos. 2:23-cv-69; 2:23-cv-168 |
| Plaintiffs, | |
| v. | Judge Travis R. McDonough |
| **CHARTER FOODS NORTH, LLC** and **CHARTER FOODS, INC.**, | Magistrate Judge Cynthia R. Wyrick |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

**SECTION**                                                                                                    **PAGE**

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT ........................................................ i

TABLE OF CONTENTS................................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................................... iv

I.      INTRODUCTION ............................................................................................................. 1

II.     SUMMARY OF THE LITIGATION ............................................................................... 2

III.    SUMMARY OF SETTLEMENT ..................................................................................... 4

        A.    The Settlement Class.............................................................................................. 4

        B.    Settlement Benefits ................................................................................................ 5

              1.    Settlement Payments ................................................................................... 5

              2.    Business Practices Changes ........................................................................ 5

              3.    Settlement Expenses ................................................................................... 6

              4.    Attorneys' Fees, Costs, and Plaintiffs' Service Awards ........................... 6

        C.    The Notice and Claims Process ............................................................................. 6

              1.    Direct Notice ............................................................................................... 6

              2.    Website and Telephone Number.................................................................. 7

              3.    Claims, Exclusions, and Objections............................................................ 8

IV.    LEGAL AUTHORITY ..................................................................................................... 8

V.     ARGUMENT .................................................................................................................... 9

        A.    The Settlement Administrator Provided Notice Pursuant to this Court's
              Preliminary Approval Order and Satisfied Due Process as Well as Rule 23.................. 9

        B.    The Settlement Terms Are Fair, Adequate, and Reasonable. ........................................ 11

1. The Settlement Agreement Meets the Requirements of Rule 23 and Should Be Approved. ................................................................. 12

    a. Class Representatives and Class Counsel have adequately represented the Class. ........................................................................... 12

    b. The proposal was negotiated at arm's length. ................................... 13

    c. The relief provided for the Class is adequate. .................................. 14

        (i) The costs, risks, and delay of trial and appeal weigh in favor of approval. .. 15

        (ii) The effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class Member claims, is objective, efficient, and fair. ....................................................... 16

        (iii) The attorneys' fees, costs, and Service Awards that Plaintiffs have requested are fair and reasonable. ....................................... 16

        (iv) No additional agreements are required to be identified under Rule 23(e)(3). ................................................................................. 17

    d. The Settlement treats Class Members equitably relative to each other. ............ 18

2. The Settlement Also Warrants Approval in Light of the Factors Traditionally Considered by Sixth Circuit Courts. .................................... 18

VI. CONCLUSION ................................................................................. 21

# **TABLE OF AUTHORITIES**

**CASES**                                                                                      **PAGE(S)**

*Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*,
    No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. May 27, 2020)..............15

*Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021). .....................15

*Bowman v. Art Van Furniture, Inc.*,
    No. 17-11630, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018). ..........................9, 11

*Bronson v. Bd. of Educ. of City Sch. Dist. of Cincinnati*,
    604 F. Supp. 68 (S.D. Ohio June 22, 1984). ............................................14

*Fitzgerald v. P.L. Mktg., Inc.*,
    No. 2:17-cv-02251, 2020 WL 3621250 (W.D. Tenn. July 2, 2020).........................17

*Franks v. Kroger Co.*, 649 F. 2d 1216 (6th Cir. 1981). ...................................9

*Fulton-Green v. Accolade, Inc.*, No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019). .........................15

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
    No. 3:09-CV-00882-WJH, 2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015)..................17

*Greenberg v. Procter & Gamble Co. ("In re Dry Max Pampers Litig.")*,
    724 F.3d 713 (6th Cir. 2013). ....................................................18

*Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992). ...........................12

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003)........................................18

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010)...............16, 20

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty. v. Momenta Pharms., Inc.*,
    No. 3:15-cv-01100, 2020 WL 3053467 (M.D. Tenn. May 20, 2020). .........................12, 17, 21

*In re Auto. Parts Antitrust Litig.*,
    No. 12-md-02311, 2018 WL 7108016 (E.D. Mich. Nov. 6, 2018). .........................12

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)..............9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013)........................................................16, 20

*In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276 (E.D. Mich. 2017). .....................10

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011). ................................... 19

*In re Regions Morgan Keegan Secs., Derivative & ERISA Litig.*,
    No. 2:09-md-2009-SMH, 2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014). ........................ 20

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-MD-1000, 2011 WL 3878332 (E.D. Tenn. Aug. 31, 2011). .................................... 14

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-cv-208, 2012 WL 12875983 (E.D. Tenn. July 11, 2012). ........................................ 17

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-MD-1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013)................................. 19, 21

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D.W. Va. 2005)........................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015). .............................. 16

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001). ........................ 13, 19

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007). ...................................................................................... 9, 12

*Johnson v. W2007 Grace Acquisition I, Inc.*,
    No. 13-2777, 2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015). ............................................... 21

*Macy v. GC Servs. Ltd. P'ship*,
    No. 3:15-cv-819, 2019 WL 6684522 (W.D. Ky. Dec. 6, 2019). ...................................... 13, 19

*Mowery v. Saint Francis Healthcare Sys.*,
    No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020)................................................................. 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). .................................................. 9

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016)............. 13, 19

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004)............................................................. 13, 19

*Ohio Pub. Int. Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1 (N.D. Ohio 1982)....................... 9

*Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172 (N.D. Ohio May 4, 2018)......... 17

*People First of Tenn. v. Clover Bottom Dev. Ctr.*,
    No. 3:95-cv-1227, 2015 WL 404077 (M.D. Tenn. Jan. 29, 2015). ............................. 19, 20, 21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). .................................................................. 9

*Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157 (9th Cir. 2013). .................................................. 18

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
No. 4:16-cv-12808, 2019 WL 3530822 (E.D. Mich. Aug. 2, 2019). ......................................... 9

*Salinas v. U.S. Xpress Enters., Inc.*,
No. 1:13-cv-00245, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018)............................................ 17

*Schuh v. HCA Holdings, Inc.*,
No. 3:11-CV-01033, 2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016). ................................. 17

*Senter v. Gen. Motors Corp.*, 532 F. 2d 511 (6th Cir. 1976). ....................................................... 12

*Sheick v. Auto. Component Carrier LLC*,
No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)................................... 13, 19

*Todd v. Retail Concepts, Inc.*,
No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008)...................................... 20, 21

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)........................................................... 12

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)........................................................................ 9

## OTHER AUTHORITIES                                                   PAGE(S)

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). ................................................................ 14

## RULES                                                                 PAGE(S)

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 16, 20

Fed. R. Civ. P. 23.............................................................................................................. 9, 11, 12

Fed. R. Civ. P. 23(c). ................................................................................................................ 10

Fed. R. Civ. P. 23(e). ........................................................................................................... passim

Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment. .............................. 12

Fed. R. Civ. P. 56................................................................................................................... 16, 20

Pursuant to Rule 23(e), Plaintiffs Amber Haney, Jason Evans, McKennia Fitch, David Knighten, and Christie Stinson ("Plaintiffs") submit this Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

## I. INTRODUCTION

On February 5, 2025, this Court preliminarily approved a class action settlement between Plaintiffs and Defendants Charter Foods North, LLC, Charter Central, LLC, and Charter Foods, Inc. (collectively, "Charter Foods" or "Defendants") (collectively, the "Parties"). Plaintiffs' and Class Counsel's efforts created a $807,500.00 non-reversionary Settlement Fund to cover: (1) up to $5,000 per Settlement Class Member in reimbursements for Documented Losses reasonably related to the Data Incident; (2) a Pro Rata Cash Payment from the remaining Settlement fund to each Class Member who submits a valid claim; (3) all court approved Attorneys' Fees, Costs, and Plaintiffs' Service Awards; (4) the costs of Settlement Administration; and (5) all Taxes and Tax-Related Expenses. In addition to the benefits described above, the Settlement Agreement[1] provides that Charter Foods will implement equitable relief for Settlement Class Members in the form of data security enhancements designed to better protect Settlement Class Members' Private Information, which remains in the possession of Defendants.

Class Counsel have zealously prosecuted Plaintiffs' claims, achieving the Settlement only after extensive investigation, negotiations, and multiple rounds of mediation that ultimately concluded with an all-day session with respected mediator Mike Ungar. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class

---

[1] Unless defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement ("SA"), ECF No. 82-1.

Members via USPS mail. The Notice achieved a reach of approximately 95% and provided Settlement Class Members with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. The Opt-Out and Objection Periods closed on May 6, 2025. Out of approximately 109,742 Settlement Class Members, not one sought to exclude themselves from the Settlement or object to it. The notice and claims process have been a success and nothing else has changed since this Court granted preliminary approval. Accordingly, this Court should now finally approve the Settlement.

## II.    SUMMARY OF THE LITIGATION[2]

Defendants are franchisees of YUM! Brands, a parent company which owns several fast foods chains, including Taco Bell, Long John Silvers, KFC, Pizza Hut Express, and A&W Stores. Second Consol. Class Action Compl. ¶ 1, ECF No. 54. As franchisees, Defendants operate numerous, similar establishments in the Southern and Northeastern United States and employ thousands of individuals. *Id*. In the ordinary course of its business, Charter Foods required its employees to provide sensitive personal and private information such as names, addresses, dates of birth, and Social Security numbers ("PII" or "Private Information"). *Id*. ¶¶ 2, 29.

This case arises from a cyber security incident on or around January 13, 2023, (the "Data Incident") that Plaintiffs allege compromised the security of their personally identifiable information ("PII") and of other current and former employees of Defendants. Joint Decl. of Class Counsel ("Counsel Decl.") ¶ 7, ECF No. 82-2. Defendants discovered this intrusion on April 7, 2023, and sent notice of the Data Incident to approximately 109,000 individuals. *Id*. Plaintiff Amber Haney filed her Complaint on May 10, 2023, seeking to recover damages on behalf of

---

[2] Sections II and III have been largely adopted from the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed January 14, 2025, at ECF No. 82.

herself and a class of other similarly situated current and former Charter Foods employees (the "Class Members"). *Id*. at ¶ 8. On June 20, 2023, Plaintiff McKennia Fitch filed her Complaint raising similar allegations against Defendants. *Id*. After the *Haney* Action and the *Fitch* Action were consolidated, a Consolidated Complaint was filed on November 15, 2023, by Plaintiffs Haney and McKennia, along with Plaintiff Jason Evans. *Id*. Plaintiffs Knighten and Stinson were added to the "Litigation" (defined below) through the Second Consolidated Class Action Complaint filed on May 20, 2024 (ECF No. 54) (referred to herein as the "Complaint"). *Id*.

After filing the Complaint, Counsel successfully opposed a motion to dismiss (ECF No. 74 (Order denying MTD in part)) and engaged in protracted negotiations with Charter Foods' Counsel over the potential scope of discovery and settlement terms. The Parties participated in three mediation conferences to settle this case. Counsel Decl. at ¶ 9. The first two mediations were unsuccessful. *Id*. The third Mediation took place on November 18, 2024, before Mediator Mike Ungar. Although an agreement was still not reached on that date, following the Mediation, Mr. Ungar suggested a Mediator's Proposal. *Id*. Both Parties accepted the Mediator's Proposal, which was memorialized in the Settlement Agreement. *Id*.

Class Counsel agreed to the Settlement because it is fair, reasonable, adequate, and addresses the reasonable objectives of the litigation without the uncertainties that Class Members would otherwise face in continued litigation. *Id*. ¶ 17. On February 5, 2025, this Court preliminarily approved the Settlement similarly finding that:

> (i) there is good cause to believe that the settlement is fair, reasonable and adequate, (ii) the Agreement has been negotiated at arm's length between experienced attorneys familiar with the legal and factual issues of this case, and (iii) the settlement warrants notice of its material terms to the Settlement Class for their consideration and reaction.

On April 22, 20205, Plaintiffs filed their Unopposed Motion for Attorneys' Fees, Costs and Service Awards ("Fee Mot."). ECF Nos. 84–85. On June 20, 2025, this Court approved

Plaintiffs' Fee Motion, reinforcing its Order on Preliminary Approval and the fairness of the Settlement. ECF No. 86.

Despite the grounds that exist for each of Plaintiffs' claims, which Charter Food denies, none is certain to resolve in Plaintiffs' favor on the merits. Further litigation would subject Plaintiffs to numerous risks, including the risk that they and the other Class Members get no recovery at all. The Settlement provides significant relief to Members of the Class and Plaintiffs strongly believe that it is favorable for the Settlement Class, fair, reasonable, adequate, and worthy of final approval. Counsel Decl. at ¶ 17.

## III.   SUMMARY OF SETTLEMENT

The Settlement negotiated on behalf of the Class provides for the creation of a $807,500.00 non-reversionary Settlement Fund. SA ¶ 1.37. The Settlement Fund shall be used by the Settlement Administrator to pay the following: (i) Costs of Settlement Administration; (ii) Taxes and Tax-Related Expenses; (iii) Service Awards; (iv) Fee Award and Costs; and (v) the Settlement Benefits elected by Settlement Class Members who submit valid and timely Settlement Claim pursuant to the terms of this Settlement. *Id*. ¶ 2.1(d).

### A.    The Settlement Class

The Settlement Class is defined as "all persons in the United States whose information may have been impacted in the Data Incident, including persons to whom Defendants mailed a notification that their information may have been impacted in the Data Incident." SA ¶ 1.33. The Settlement Class specifically excludes: (i) Defendants and its respective officers and directors; (ii) all Members of the Settlement Class who timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this Settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of

4

initiating, causing, aiding, or abetting the Data Incident or who pleads nolo contendere to any such charge." *Id.*

## B. Settlement Benefits

The Settlement Fund shall be used to pay for cash payments to Class Members, the cost of providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, the Costs of Settlement Administration, the Fee Award and litigation expenses, and Service Awards to Representative Plaintiffs, as approved by the Court. *Id.* ¶¶ 3.3, 7.2–4.

### 1. Settlement Payments

Each Settlement Class Member who submits a valid/timely Claim Form may receive:

(a)     Documented Loss Fund. The Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) reasonable documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement.

(b)     Non-Documented Pour-Over Fund. Following the distribution of Administrative Expenses, Service Awards, Out-of-Pocket Expense Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, the Settlement Administrator will make a pro rata cash payment from the remaining Settlement fund to each Class Member who submits a valid claim, as determined by the Settlement Administrator in accordance with the Settlement Agreement or, if applicable, the dispute resolution process therein, so long as the funds are available.

*Id.* ¶ 2.2.

### 2. Business Practices Changes

Plaintiffs have received assurances that Defendants have implemented or will implement certain reasonable steps to adequately secure its systems and environments presently and in the future. *Id.* ¶ 2.4. One of the Plaintiffs' principal objectives in filing this litigation was to compel a

change in Defendants' cybersecurity practices, so obtaining these assurances achieves Plaintiffs' goal and adds to the overall value of the Settlement.

        3.    <u>Settlement Expenses</u>

All costs for notifying the Settlement Class and the Costs of Settlement Administration shall be paid out of the Settlement Fund. *Id.* ¶¶ 2.6, 3.3–3.4, 8.

        4.    <u>Attorneys' Fees, Costs, and Plaintiffs' Service Awards</u>

By separate motion, Plaintiffs sought and were awarded an award of attorneys' fees in the amount of $266,475 (one-third of the $807,500 Settlement Fund), reimbursement of actual litigation costs and expenses in the amount of $17,817.73, and Service Awards in the amount of $5,000 to each of the Representative Plaintiffs. *See* ECF Nos. 84–86.

**C.    The Notice and Claims Process**

In accordance with the Preliminary Approval Order, the Parties engaged Simpluris, Inc. ("Simpluris") as the Notice Specialist and Settlement Administrator in this case.

        1.    <u>Direct Notice</u>

The Direct Notice Program was a success with individual notice reaching approximately 95% of Settlement Class Members and providing them with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement.

On or about February 24, 2025, Counsel for Defendants provided Simpluris with a data file containing 109,776 known Settlement Class Member names and mailing addresses. Decl. of Settlement Administrator Simpluris, Inc. Regarding Notice and Administration ("Notice Decl."), filed at ECF No. 88-1, ¶ 7. Upon receipt of the Class List, Simpluris "scrubbed" the data to ensure it was in proper format for distributing the Notice via U.S. Mail. *Id.* ¶ 8. In an effort to ensure that the Notice would be delivered to Settlement Class Members, Simpluris compared the address data

against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from NCOA. *Id.* Thirty-four exact duplicates were removed, and the Class List was confirmed to contain 109,742 Settlement Class Members. Of the 109,742 Members, nine did not contain a valid mailing address. *Id.*

On March 7, 2025, Simpluris mailed the Postcard Notice to the 109,733 Settlement Class Members for whom a valid mailing address was available. *Id.* ¶ 9. As of June 26, 2025, 29,806 Postcard Notices have been returned by USPS. *Id.* ¶ 10. For the mailings returned without a forwarding address, Simpluris performed an advanced address search (*i.e.*, skip trace) on these addresses by using Accurint, a reputable research tool owned by LexisNexis. *Id.* Simpluris used the Class Member's name and previous address to locate a more current address. *Id.* Of the 29,806 returned Notices, 23,851 Notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS, and 5,955 Notices were determined to be undeliverable because no updated address was available. *Id.*

In sum, the Direct Notice Program was a success, achieving a reach of approximately 95%.

2. Website and Telephone Number

In addition to the Direct Mail, Simpluris also established a Settlement Website and toll-free telephone hotline to serve as additional resources for Settlement Class Members. *Id.* ¶¶ 11–12. The Settlement Website, www.CharterFoodsDataBreach.com, is dedicated to this matter to provide information to the Settlement Class Members, to answer frequently asked questions, and allow Settlement Class Members to file a claim. *Id.* ¶ 11. As of June 26, 2025, the website has been visited by 3,595 unique visitors with 17,117 page views. *Id.*

7

A Settlement-specific toll-free telephone number was included in the notice and on the website for the purpose of allowing Settlement Class Members to make inquiries regarding the Settlement. *Id.* ¶ 12. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement administration. *Id.* The toll-free telephone number included in the Notice and on the website is 1-833-207-6994. *Id.* This telephone number is active and has been available to the public since March 7, 2025. *Id.* The Settlement-specific toll-free telephone number has received 1,068 phone calls between March 7, 2025 and June 26, 2025. *Id.*

### 3. Claims, Exclusions, and Objections

The deadline to submit a claim form was June 5, 2025. *Id.* ¶ 13. Settlement Class Members were able to submit a claim through the Settlement Website or by mailing a physical claim form to the Settlement Administrator. *Id.* As of June 26, 2025, Simpluris has received 1,953 Claim Form submissions. *Id.*

Of the claims received for Documented Out-of-Pocket Losses, 48 Settlement Class Members claimed a total of $1,023,517.47 in out-of-pocket losses. *Id.* ¶ 15. Of the $1,023,517.47 out-of-pocket costs claimed, $4,943.29 out-of-pocket losses have been approved to date. *Id.* Of the claims received for a Pro Rata Cash Payment, 1,947 were valid representing 1.77% of the Settlement Class. *Id.* ¶ 14.

After the Settlement is approved and the time for any appeal has passed, the Settlement Claims Administrator will also be responsible for calculating and transmitting Settlement Class Member payments. *Id.* ¶ 4.

## IV. LEGAL AUTHORITY

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise

outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Ohio Pub. Int. Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio 1982) (citing *Franks v. Kroger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981)). Before approving a settlement, however, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *3 (E.D. Mich. Dec. 10, 2018) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*Int'l Union*") (citing Fed. R. Civ. P. 23)); *see also* Fed. R. Civ. P. 23(e)(2). "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." *Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 4:16-cv-12808, 2019 WL 3530822, at *2 (E.D. Mich. Aug. 2, 2019) (internal quotations omitted) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)). The Court must also determine whether the Notice provided satisfies the requirements of Rule 23. *Raden*, 2019 WL 3530822, at *2.

## V. ARGUMENT

### A. The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as Well as Rule 23.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Notice to the settlement class should include individual notice to all members who can be identified through reasonable effort. Fed. R. Civ.

23(c)(2)(B). The claims rate should not be viewed as a reflection on the adequacy of the notice. *See In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 290–91 (E.D. Mich. 2017) (citing *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 235–36 (S.D.W. Va. 2005) (concluding that a claims rate of less than 1%—6,524 claimants out of a settlement class that could have potentially included millions—did not demonstrate the inadequacy of the notice, noting that "many factors contribute to the claims response rate," and observing that "claims response levels will tend to vary with the circumstances, types of class notices employed, and size of individual claims involved in each case") (internal quotation marks and citations omitted)).

First, the content of the Notice adequately informed Settlement Class Members of their rights and obligations under the Settlement. The Direct Mail Notice contained a summary of key terms of the Settlement Agreement and directed Settlement Class Members to the Settlement Website and toll-free telephone hotline where they could obtain additional information. Notice Decl., Exs. A–B. The Settlement Website, www.CharterFoodsDataBreach.com, is dedicated to this matter to provide information to the Settlement Class Members, to answer frequently asked questions, and allow Settlement Class Members to file a claim. *Id.* ¶ 11. The website URL was set forth in the Notice. *Id.* Visitors of the Settlement Website can download copies of the Notice and other case-related documents. *Id.* The toll-free telephone hotline, 1-833-207-6994, was established and is maintained for potential Settlement Class Members to call and obtain information about the Settlement. *Id.* ¶ 12. This telephone number is active and has been available to the public since March 7, 2025. *Id.*

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken extraordinary measures to ensure individual Notice reached as many of the Settlement Class Members as possible, including significant remailing efforts. Out of 109,733 Postcard Notices

Simpluris initially sent to Class Members, 29,806 were returned by USPS. *Id.* ¶¶ 9–10. However, 23,851 were successfully remailed using Accurint, a reputable research tool owned by LexisNexis, or with forwarding addresses provided by USPS. *Id.* These extensive efforts resulted in direct and individual Notice reaching an estimated **95% of the Class**—a deliverable rate that exceeds the requirements of due process and Rule 23. *Id.* ¶ 13; *see also Bowman v. Art Van Furniture*, 2018 WL 6445389, at *3 (finding a combined email and mail notice program with a deliverable rate of 92.6% satisfied the requirements of Rule 23 and due process).

Accordingly, the Notice program should be approved as meeting the requirements of due process and Rule 23.

### B. The Settlement Terms Are Fair, Adequate, and Reasonable.

Federal Rule 23(e)(2) requires certain factors to be considered by a court before granting final approval of a class action settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Before the 2018 revisions to Rule 23(e), the Sixth Circuit had developed its own list of factors for consideration in determining whether to grant final approval of a class action settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union*, 497 F.3d at 631; *see also UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The court may choose to consider only those factors that are relevant to the settlement at hand. *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2018 WL 7108016 (E.D. Mich. Nov. 6, 2018); *see also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

While there is some overlap between the two sets of standards, as is consistent with practice in the Middle District of Tennessee, Plaintiffs will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the factors historically considered by Sixth Circuit Courts. *See, e.g.*, *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty. v. Momenta Pharms., Inc.*, No. 3:15-cv-01100, 2020 WL 3053467 (M.D. Tenn. May 20, 2020) (slip op.) (granting final approval of class action settlement after considering both the requirements set forth in Rule 23 and factors traditionally enumerated by the Sixth Circuit).

The Agreement reached by Parties here meets the standards set forth by Federal Rules of Civil Procedure and Courts in this Circuit and warrants final approval.

1. The Settlement Agreement Meets the Requirements of Rule 23 and Should Be Approved.

   a. *Class Representatives and Class Counsel have adequately represented the Class.*

The adequacy requirement of Rule 23(e)(2)(A) is satisfied where (1) the representative has common interests with unnamed members of the class, and (2) it appears that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter v. Gen. Motors Corp.*, 532 F. 2d 511, 525 (6th Cir. 1976). In the context of settlement, this includes consideration of the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment. Formal discovery is not required: the relevant inquiry with respect to this factor is whether a plaintiff has "obtained a sufficient understanding of

the case to gauge the strengths and weaknesses of the claims and adequacy of the settlement." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001)); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)); *see also Macy v. GC Servs. Ltd. P'ship*, No. 3:15-cv-819, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019) (slip op.).

Here, Plaintiffs are members of the Class who allege the same injuries and seek, like other Class Members, both reimbursement for costs incurred due to the Data Breach and assurances that the Private Information that Defendants hold is and will remain better safeguarded than it was at the time of the Data Breach. As such, their interests and the interests of their counsel are not inconsistent with those of other Class Members.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Counsel Decl. ¶¶ 18–23. The Settlement was only reached after Class Counsel had completed an extensive investigation of the case, successfully opposed a motion to dismiss (ECF No. 74 (Order denying MTD in part)), and engaged in protracted negotiations with Charter Foods' Counsel including three mediation conferences to settle this case (Counsel Decl. at ¶ 9). These efforts allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiffs' case and to conduct informed settlement negotiations.

Accordingly, the Settlement meets the requirements of Rule 23(e)(2)(A).

    b. *The proposal was negotiated at arm's length.*

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. "A settlement reached after a supervised mediation receives a

presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). Indeed, settlements are regularly granted approval where a court finds that they are the product of informed, non-collusive, arm's-length negotiations. *See In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2011 WL 3878332, at *2 (E.D. Tenn. Aug. 31, 2011) (finding a settlement negotiated by able experienced lawyers with the help of a capable mediator was negotiated at "arms length" and warranted approval); *Bronson v. Bd. of Educ. of City Sch. Dist. of Cincinnati*, 604 F. Supp. 68, 78 (S.D. Ohio June 22, 1984) (approving settlement where there was no hint of collusion in the negotiating process).

The Settlement here is the result of intensive arm's-length negotiations between attorneys experienced in both class actions generally, and data breach cases in particular. *See* Counsel Decl. ¶ 10. The Agreement was reached with the assistance of an experienced mediator, Mike Ungar, and was only finalized after three separate, full-day mediation sessions and a mediator's proposal. *Id*. As such, this Settlement meets the requirements of Rule 23(e)(2)( B) and should be approved.

           c.    *The relief provided for the Class is adequate.*

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The Settlement negotiated on behalf of the Class provides for significant relief. The Settlement, if approved, will create a $807,500.00 non-reversionary Settlement Fund from which Settlement Class Members can make a claim for up to $5,000 per person in Documented Loss Payments and a Pro Rata Cash Payment. SA ¶¶ 1.37, 2.2. The Settlement also includes assurances that Defendants have implemented or will implement certain reasonable steps to adequately secure its systems and environments presently and in the future. SA ¶2.4.

The relief provided compares favorably with other settlements finally approved in similar data breach cases. *See, e.g.*, *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC

(E.D. Mo. Dec. 22, 2020) (providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancement); *Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*, No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. May 27, 2020) (providing up to $210 per class member for reimbursement of ordinary expenses and time spent dealing with the data breach, up to $2500 for extraordinary losses, and equitable relief in the form of security enhancements valued at no less than $480,000); *see also* Order Granting Final Approval, *Fulton-Green v. Accolade, Inc.*, No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019), ECF No. 39 (granting approval of non-healthcare related data breach class action settlement providing for expense reimbursement up to $1,500 per class member, and increased cyber security measures of undisclosed worth for two years following the Data Incident).

(i)    *The costs, risks, and delay of trial and appeal weigh in favor of approval.*

The relief provided by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Charter Foods will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ.

6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

While Plaintiffs are confident in the merits of their claims, it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

> (ii)  *The effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class Member claims, is objective, efficient, and fair.*

As described in Section III.D.3, *supra*, all Class Members were given ample notice and time to make claims—and thousands did make claims, which will exhaust the Settlement Fund. After the Settlement is approved and the time for any appeal has passed, the Settlement Claims Administrator will also be responsible for calculating and transmitting Settlement Class Member payments. As such, the Settlement provides for effective processing and distribution of relief and should be approved.

> (iii)  *The attorneys' fees, costs, and Service Awards that Plaintiffs have requested are fair and reasonable.*

On April 22, 2025, Plaintiffs sought an award of attorneys' fees in the amount of $266,475 (one-third of the $807,500 Settlement Fund), reimbursement of actual litigation costs and expenses in the amount of $17,817.73, and Service Awards in the amount of $5,000 to each of the

Representative Plaintiffs. On June 20, 2025, this Court approved Plaintiffs' Fee Motion. ECF No. 86.

As discussed at length in Plaintiffs' Fee Motion, Plaintiffs' requests are reasonable and in line with those regularly granted by Sixth Circuit Courts. *See, e.g.*, *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty.*, 2020 WL 3053468 (awarding one-third fee); *Schuh v. HCA Holdings, Inc.*, No. 3:11-CV-01033, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (awarding 30% fee); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc*., No. 3:09-CV-00882-WJH, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (awarding 29% fee); *Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-02251, 2020 WL 3621250 (W.D. Tenn. July 2, 2020) (approving fees equal to 33 and 1/3% of the $1,575,000 settlement fund); *In re Se. Milk Antitrust Litig.*, No. 2:07-cv-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting that a 33.33 percent attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *see also Fitzgerald v. P.L. Mktg., Inc.*, 2020 WL 3621250, at *11 (approving service award of $7,500 to plaintiffs who participated in client interviews and produced relevant documents); *Salinas v. U.S. Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to name plaintiffs between $7,500 and $10,000); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (approving $7,500 service payment to named plaintiff). Importantly, no Class Members have objected to Plaintiffs' request for fees, costs, and Service Awards. Notice Decl. ¶ 19.

(iv)   *No additional agreements are required to be identified under Rule 23(e)(3).*

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

d. *The Settlement treats Class Members equitably relative to each other.*

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Each Class Member had until June 5, 2025 to make a claim from the Settlement Fund for (1) reimbursement based on the amount of out-of-pocket expenses they actually incurred and (2) a pro rata cash payment based on their membership in the Class/status as a victim of the Data Incident. As such, each Class Member had an equal and fair opportunity to benefit from the Settlement.

Moreover, Plaintiffs' modest requested service award of $5,000 represents fair compensation for the service Plaintiffs have performed on behalf of the Class. Thus, there is no concern that they may be being treated unequitable or compromising the interest of the Class for personal gain:

> The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs. The members' incentives are thus aligned.

*Greenberg v. Procter & Gamble Co. ("In re Dry Max Pampers Litig.")*, 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1161 (9th Cir. 2013))). Accordingly, this factor weighs in favor of settlement approval.

2. The Settlement Also Warrants Approval in Light of the Factors Traditionally Considered by Sixth Circuit Courts.

First, there is no risk of fraud or collusion: Class Counsel vigorously negotiated the settlement and came to an agreement with Defendants only after three mediation sessions and a mediator's proposal. Counsel Decl. ¶ 9. Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless contrary evidence is offered.

*People First of Tenn. v. Clover Bottom Dev. Ctr.*, No. 3:95-cv-1227, 2015 WL 404077 (M.D. Tenn. Jan. 29, 2015) (quoting *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155379, at *4 (E.D. Tenn. May 17, 2013)); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011). This factor weighs in favor of settlement approval.

Second, the complexity, expense, and likely duration of the litigation weigh in favor of Settlement. The Settlement provides immediate relief and protections for Class Members, where continued litigation would lead to inevitable delay of an uncertain outcome. "Most class actions are inherently complex and settlement avoids the costs, delays and a multitude of other problems associated with them." *People First of Tenn.*, 2015 WL 404077 (quoting *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *4); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1013. The same is particularly true here, where the quickly evolving nature of data breach cases leads to further uncertainty and risk. Accordingly, this factor weighs in favor of settlement approval.

Third, Plaintiffs have conducted extensive investigation and work, including successfully opposing a motion to dismiss, to "obtain[ ] a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and adequacy of the settlement." *N.Y. State Tchrs.' Ret. Sys.*, 315 F.R.D. at 236 (E.D. Mich. 2016) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1015); *Sheick*, 2010 WL 4136958, at *19 (quoting *Newby v. Enron Corp.*, 394 F.3d at 306); *see also Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *2. Thus, this factor weighs in favor of settlement approval.

Fourth, success in continued litigation is uncertain. While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Charter Foods, as well as the risks inherent to continued litigation. Charter Foods has

19

consistently denied the allegations raised by Plaintiffs and made clear at the outset that they would vigorously defend the case. Moreover, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Here, Settlement provides a guaranteed and significant positive outcome for Class Members, and thus should be approved.

Fifth, experienced Class Counsel strongly believe that the Settlement Agreement is favorable for the Settlement Class; fair, reasonable, and adequate; and worthy of final approval. Counsel Decl. ¶¶ 15–17. The Class Representatives have also reviewed and approved of the Settlement. *Id*. Class Counsel have decades of combined experience as vigorous class action litigators and a demonstrated track record of successfully litigating data breach cases on behalf of their clients and classes. *See* Counsel Decl. ¶ 18–23. Their collective judgment that the settlement is in the best interests of the class weighs heavily in favor of the Court's final approval. *People First of Tenn.*, 2015 WL 404077, at *3; *Todd v. Retail Concepts, Inc.*, No. 3:07-0788, 2008 WL 3981593, at *5 (M.D. Tenn. Aug. 22, 2008).

Sixth, after completion of notice, claims, objection, and exclusion periods as approved by this Court, no Class Members have requested exclusion, and no Class Members have objected to the Settlement. Notice Decl. ¶¶ 17–19. The lack of objections and exclusions strongly support approval of the Settlement. *See In re Regions Morgan Keegan Secs., Derivative & ERISA Litig.*, No. 2:09-md-2009-SMH, 2014 WL 12808031, at *4 (W.D. Tenn. Dec. 24, 2014) ("If only a small number of objections are received from a large class, that fact can be viewed as indicative of the

adequacy of the settlement") (collecting cases); *see also Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty.*, 2020 WL 3053467 (approving class action settlement with zero objections); *People First of Tenn.*, 2015 WL 404077, at *3 (approving settlement with limited objections); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *9 (W.D. Tenn. Dec. 4, 2015) (granting final approval of a settlement with 2,200 potential class members and 144 objectors).

And finally, the proposed Settlement benefits the public interest. "[T]here is a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve." *People First of Tenn.*, 2015 WL 404077, at *3 (citing *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *7). Moreover, "[t]here are strong and important public interests in deterring identity theft and ensuring that private companies comply with applicable federal laws." *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593, at *5. Accordingly, the public interest weighs in favor of settlement approval.

## VI. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF Nos. 81–82) and Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards (ECF Nos. 84–85), Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Class Counsel and Plaintiffs as representatives for the Class, and grant final approval of this Settlement.

Dated: July 8, 2025

Respectfully submitted,

By: */s/ Lisa A. White*
Lisa A. White
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Telephone: (202) 470-6213
Email: lwhite@masonllp.com

Scott E. Cole
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
Email: tbean@sirillp.com

John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: jyanchunis@forthepeople.com

*Counsel for Plaintiffs and the Putative Class*